# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

LINDSEY LYNN KONOPKA,

        Defendant-Appellant.

FOR PUBLICATION
March 3, 2015
9:10 a.m.

No. 319913
Ingham Circuit Court
LC No. 13-000362-FH

Before: RIORDAN, P.J., and MURPHY and BOONSTRA, JJ.

BOONSTRA, J.

Defendant pleaded guilty to first-degree retail fraud, MCL 750.356c, and conspiracy to commit first-degree retail fraud, MCL 750.157a. The trial court sentenced defendant as a second habitual offender, MCL 769.10, to one and one-half to five years' imprisonment for the first-degree retail fraud conviction and two to five years' imprisonment for the conspiracy to commit first-degree retail fraud conviction. The trial court additionally ordered defendant to pay court costs in the amount of $500.

## I. PROCEDURAL HISTORY

Defendant filed a delayed application for leave to appeal, arguing that the sentence was invalid because the departure and the extent of the departure were not supported by legally valid reasons and that the trial court did not correctly advise defendant regarding his rights of appeal. This Court denied the delayed application for leave to appeal for lack of merit in the grounds presented.[1]

Defendant then applied for leave to appeal to the Michigan Supreme Court, raising the same issues asserted in her delayed application filed in this Court. Defendant also filed a motion in the Supreme Court seeking to add an issue, and for leave to file a supplemental brief, concerning the trial court's imposition of court costs. On September 19, 2014, the Supreme Court entered an order that stated:

---

[1] *People v Konopka*, unpublished order of the Court of Appeals, entered February 21, 2014 (Docket No. 319913).

On order of the Court, the motion to add issue and file supplemental brief is GRANTED. The application for leave to appeal the February 21, 2014 order of the Court of Appeals is considered and, pursuant to MCR 7.302(H)(1), in lieu of granting leave to appeal, we REMAND this case to the Court of Appeals for consideration of whether the circuit court improperly imposed court costs, in light of our decision in *People v Cunningham*, 496 Mich 145[; 852 NW2d 118] (2014), and if so, whether the circuit court's assessment of $500 in "court costs" constitutes plain error affecting the defendant's substantial rights. Contrast *People v Franklin*, 491 Mich 916 (2012), with *Johnson v United States*, 520 US 461, 467-468[; 117 S Ct 1544; 137 L Ed 2d 718] (1997).

We direct the Court of Appeals' attention to the fact that we have also remanded *People v Holbrook* (Docket No. 149005) [Court of Appeals Docket No. 319565] to the Court of Appeals for consideration of similar issues. In all other respects, leave to appeal is DENIED, because we are not persuaded that the remaining questions presented should be reviewed by this Court. [*People v Konopka*, 497 Mich 863, 863-864; 852 NW2d 903 (2014).[2]]

On remand from our Supreme Court, defendant argued that the trial court's imposition of costs was improper in light of *Cunningham*. In response, the prosecution argued that the imposition of costs was proper in light of the Legislature's post-*Cunningham* amendment of MCL 769.1k. Defendant replied that this Court should disregard the prosecution's response because the Legislature's post-*Cunningham* amendment of MCL 769.1k was not within the scope of the Supreme Court's remand order, and further suggested, without fully articulating her position, that "possible responsive arguments" could be made concerning the constitutionality of the Legislature's post-*Cunningham* amendment of MCL 769.1k. This Court subsequently ordered supplemental briefing concerning the constitutional arguments suggested in defendant's reply brief on appeal.[3] In compliance with that order, the parties filed supplemental briefs addressing those constitutional issues.

We now consider defendant's challenges to the imposition of court costs, and conclude that the trial court possesses the authority, pursuant to MCL 769.1k, as amended by 2014 PA 352, to order court costs; however we remand to the trial court to establish whether the court costs imposed were "reasonably related to the actual costs incurred by the trial court without separately calculating those costs involved in the particular case," MCL 769.1k(1)(b)(*iii*), as amended by 2014 PA 352, or to adjust that amount as may be appropriate. We reject defendant's constitutional challenges to the amended version of MCL 769.1k.

---

[2] *Holbrook* has since been resolved following the prosecution's confession of error in that case. See *People v Holbrook*, unpublished order of the Court of Appeals, issued January 16, 2015, amended February 13, 2015 (Docket No. 319565).

[3] See *People v Konopka*, unpublished order of the Court of Appeals, entered January 20, 2015 (Docket No. 319913).

## II.  MCL 769.1k AND *CUNNINGHAM*

We first are obliged to consider—and we reject—defendant's suggestion that we should not consider the prosecution's position regarding the impact of the Legislature's post-*Cunningham* amendment of MCL 769.1k.  Certainly, it is true, as defendant points out, that the legislative amendment was not within the stated scope of the Supreme Court's remand order. But it is equally if not more true that a post-*Cunningham* legislative amendment obviously could not have been addressed within the text of a *Cunningham* order that was necessarily issued before the legislative amendment was even enacted.  It is also true—and we specifically hold— that the subject matter of the legislative amendment is so inextricably tied to the subject matter of the decision in *Cunningham* that it is appropriate for us to consider them in conjunction with each other, and in fact that it would be inappropriate for us to do otherwise.[4]

At the time of sentencing, and at the time of defendant's commission of the offenses giving rise to sentencing, MCL 769.1k provided, in relevant part:

> (1) If a defendant enters a plea of guilty or nolo contendere or if the court determines after a hearing or trial that the defendant is guilty, both of the following apply at the time of the sentencing or at the time entry of judgment of guilt is deferred pursuant to statute or sentencing is delayed pursuant to statute:

> (a) The court shall impose the minimum state costs as set forth in section 1j of this chapter.

> (b) The court may impose any or all of the following:

> (*i*) Any fine.

> (*ii*) *Any cost* in addition to the minimum state cost set forth in subdivision (a).

> (*iii*) The expenses of providing legal assistance to the defendant.

> (*iv*) Any assessment authorized by law.

> (*v*) Reimbursement under section 1f of this chapter.  [MCL 761.1k, prior to amendment by 2014 PA 352.  Emphasis added.]

In *People v Sanders*, 296 Mich App 710, 715; 825 NW2d 87 (2012) (*Sanders I*), overruled in part by *People v Cunningham*, 496 Mich 145 (2014), this Court held "that a trial court may impose a generally reasonable amount of court costs under MCL 769.1k(1)(b)(*ii*)

---

[4] We further note that although defendant initially took the position that the prosecution should have presented the issue of the legislative amendment by way of cross-appeal, defendant appears to have retracted that position in her supplemental brief.

without the necessity of separately calculating the costs involved in the particular case . . . ." Because the trial court in *Sanders I* did not adequately explain the factual basis for its award of $1,000 in court costs, a remand was required "in order to facilitate meaningful appellate review of the reasonableness of the costs assessed defendant." *Id*. In *People v Sanders (After Remand)*, 298 Mich App 105, 108; 825 NW2d 376 (2012) (*Sanders II*), this Court expressed satisfaction "that the trial court complied with our directives on remand and did establish a sufficient factual basis to conclude that $1,000 in court costs under MCL 769.1k(1)(b)(*ii*) is a reasonable amount in a felony case conducted in the Berrien Circuit Court."

In *Cunningham*, 496 Mich at 147, our Supreme Court held that MCL 769.1k(1)(b)(*ii*) did not provide courts with the "independent authority to impose costs on criminal defendants." Rather, "MCL 769.1k(1)(b)(*ii*) provides courts with the authority to impose only those costs that the Legislature has separately authorized by statute." *Id*. The *Cunningham* Court reasoned that while MCL 769.1k allows courts to impose "any cost in addition to the minimum state cost," the statute also authorized courts to impose other costs, including the expense of providing legal assistance to the defendant and any costs incurred in compelling the defendant's appearance. *Id*. at 154. These additional cost provisions would have been unnecessary if MCL 769.1k(1)(b)(*ii*) had provided courts with the independent authority to impose "any cost." *Id*. Further, when the Legislature enacted MCL 769.1k, numerous statutes provided courts with the authority to impose specific costs for certain offenses. *Id*. at 156. Therefore, "[i]nterpreting MCL 769.1k(1)(b)(*ii*) as providing courts with the independent authority to impose 'any cost' would essentially render the cost provisions within those statutes nugatory . . . ." *Id*. The Court noted that the Legislature has continued to enact provisions authorizing courts to impose particular costs for certain offenses, which again suggests that the Legislature did not intend for MCL 769.1k(1)(b)(*ii*) to provide courts with independent authority to impose "any cost." *Id*. at 156-157. The Court also noted that if it held that MCL 769.1k(1)(b)(*ii*) provided courts with the independent authority to impose "any cost," then MCL 769.1k(1)(b)(*i*) would logically provide courts with the independent authority to impose "any fine." *Id*. at 157. Such a holding would nullify statutory provisions that fix the amount of fines for certain offenses because courts could impose "any fine" without reference to the limitations set forth in other statutes. *Id*. Thus, the conclusion that MCL 769.1k(1)(b)(*i*) did not provide independent authority to impose "any fine" suggested that MCL 769.1k(1)(b)(*ii*) did not provide independent authority to impose "any cost." *Id*. at 158.

The *Cunningham* Court concluded:

> In light of the foregoing analysis, we conclude that MCL 769.1k(1)(b)(*ii*) does not provide courts with the independent authority to impose "any cost." Instead, we hold that MCL 769.1k(1)(b)(*ii*) provides courts with the authority to impose only those costs that the Legislature has separately authorized by statute. In other words, we find that MCL 769.1k(1)(b)(*ii*) seeks comprehensively to incorporate by reference the full realm of statutory costs available to Michigan courts in sentencing defendants, so that the Legislature need not compendiously list each such cost in MCL 769.1k. Our understanding of MCL 769.1k(1)(b)(*ii*), we believe, accords respect to its language, to the language of other cost provisions within MCL 769.1k, and to the language of other statutes enacted by the Legislature conferring upon courts the authority to impose specific costs for certain offenses. [*Id*. at 158-159 (footnotes omitted).]

-4-

Because *Sanders I* assumed that MCL 769.1k(1)(b)(*ii*) authorized the imposition of costs without any explicit limitation, the *Cunningham* Court overruled *Sanders I* to the extent that it was inconsistent with the opinion in *Cunningham*. *Id*. at 159.

Following the issuance of *Cunningham*, the Legislature amended MCL 769.1k; the amended statute became immediately effective on October 17, 2014. See 2014 PA 352. The enacting sections of 2014 PA 352 provide:

> Enacting section 1. This amendatory act applies to all fines, costs, and assessments ordered or assessed under section 1k of chapter IX of the code of criminal procedure, 1927 PA 175, MCL 769.1k, before June 18, 2014, and after the effective date of this amendatory act.

> Enacting section 2. This amendatory act is a curative measure that addresses the authority of courts to impose costs under section 1k of chapter IX of the code of criminal procedure, 1927 PA 175, MCL 769.1k, before the issuance of the supreme court opinion in <u>People</u> v <u>Cunningham</u>, 496 Mich 145 (2014).

> This act is ordered to take immediate effect.

The amended version of MCL 769.1k(1)(b) states in relevant part:

> (b) The court may impose any or all of the following:

> (*i*) Any fine authorized by the statute for a violation of which the defendant entered a plea of guilty or nolo contendere or the court determined that the defendant was guilty.

> (*ii*) Any cost authorized by the statute for a violation of which the defendant entered a plea of guilty or nolo contendere or the court determined that the defendant was guilty.

> (*iii*) Until 36 months after the date the amendatory act that added subsection (7) is enacted into law, any cost reasonably related to the actual costs incurred by the trial court without separately calculating those costs involved in the particular case, including, but not limited to, the following:

> (A) Salaries and benefits for relevant court personnel.

> (B) Goods and services necessary for the operation of the court.

> (C) Necessary expenses for the operation and maintenance of court buildings and facilities.

> (*iv*) The expenses of providing legal assistance to the defendant.

> (*v*) Any assessment authorized by law.

(*vi*) Reimbursement under section 1f of this chapter.

Our Supreme Court remanded the instant case to this Court after the issuance of *Cunningham* but prior to the amendment of MCL 769.1k. Our Supreme Court directed this Court to consider whether the trial court improperly imposed court costs, in light of *Cunningham*, and if so, whether the assessment of $500 in court costs constitutes plain error affecting defendant's substantial rights.

### III. TRIAL COURT'S AUTHORITY TO IMPOSE COURT COSTS

Because defendant failed to object when the trial court ordered her to pay costs and attorney fees, we review her challenge to the trial court's imposition of court costs for plain error. See *People v Dunbar*, 264 Mich App 240, 251; 690 NW2d 476 (2004), overruled on other grounds *People v Jackson*, 483 Mich 271 (2009). Statutory interpretation presents a question of law that is reviewed de novo. *Cunningham*, 496 Mich at 149. We hold that, because the Legislature has amended MCL 769.1k, the trial court's imposition of court costs was valid.

If the Legislature had not amended MCL 769.1k, the cost award in this case would have been invalid under *Cunningham*. Under *Cunningham*, 496 Mich at 147, the former version of MCL 769.1k(1)(b)(*ii*) provided courts with the authority to impose only those costs that were separately authorized by statute. Defendant was convicted of first-degree retail fraud, MCL 750.356c, and conspiracy to commit first-degree retail fraud, MCL 750.157a. The statutes for those offenses do not authorize the imposition of court costs. See MCL 750.356c(1) (authorizing imprisonment and a fine); MCL 750.157a (authorizing imprisonment and a fine). Nor did any other statute separately authorize the imposition of the costs imposed. Therefore, the imposition of court costs is not separately authorized by statute, as required by *Cunningham*.

However, the trial court's cost award is authorized by the amended version of MCL 769.1k(1)(b)(*iii*). This amended version became effective on October 17, 2014, and applies to all fines, costs, and assessments under MCL 769.1k before June 18, 2014, and after the effective date of the amendatory act. 2014 PA 352. The amended act was a curative measure to address the authority of courts to impose costs under MCL 769.1k before the issuance of *Cunningham*. 2014 PA 352. " 'When a new law makes clear that it is retroactive, an appellate court must apply that law in reviewing judgments still on appeal that were rendered before the law was enacted, and must alter the outcome accordingly.' " *Mayor of Detroit v Arms Technology, Inc*, 258 Mich App 48, 65; 669 NW2d 845 (2003), quoting *Plaut v Spendthrift Farm, Inc*, 514 US 211, 227; 115 S Ct 1447; 131 L Ed 2d 328 (1995) (addressing Congress's authority to revise the judgments of federal courts). This case was still on appeal when the amended version of MCL 769.1k was adopted; further, the costs in this case were imposed on July 17, 2013. Therefore the amended act applies to this case.

The amended version of MCL 769.1k(1)(b)(*iii*) provides for an award of certain costs that are *not* independently authorized by the statute for the sentencing offense, in contrast to the amended version of MCL 769.1k(1)(b)(*ii*), which provides that a court may impose "[a]ny cost authorized by the statute for a violation of which the defendant entered a plea of guilty or nolo contendere or the court determined that the defendant was guilty." This Court must give effect to every word, phrase, and clause and avoid an interpretation that would render any part of the

statute surplusage or nugatory." *Cunningham*, 496 Mich at 154 (quotation marks and citation omitted). MCL 769.1k(1)(b)(*ii*) would be rendered surplusage if MCL 769.1k(1)(b)(*iii*) merely provided for the imposition of costs that were separately authorized by the statute for the underlying offense, given that MCL 769.1k(1)(b)(*ii*) *already* provides for the imposition of such costs. We therefore conclude that MCL 769.1k(1)(b)(*iii*) authorizes the imposition of costs independently of the statute for the sentencing offense.

At oral argument, defense counsel argued that the amended version of MCL 769.1k does not fix the problem identified in *Cunningham*. In essence, defendant interprets *Cunningham* as requiring that the separate authority for the imposition of court costs derive from a "penal" statute other than the "procedural" provisions of MCL 769.1k. However, such an interpretation would render nugatory other provisions of MCL 769.1k. Moreover. we find such an interpretation of *Cunningham* strained in light of the Court's limited conclusion that it did not "believe that the Legislature intended MCL 769.1k(1)(b)(*ii*) to provide courts with the independent authority to impose 'any cost.' " *Cunningham*, 496 Mich at 159. Nothing in the *Cunningham* opinion leads to the conclusion that the Legislature is forbidden from granting trial courts the authority to impose reasonable court costs independent of the statute for a sentencing offense, or that the Legislature is forbidden to place such authority within MCL 769.1k itself.[5]

In light of the adoption of 2014 PA 352, the trial court's imposition of costs was not erroneous.[6] However, although the costs imposed in this case need not be separately calculated,

_____

[5] To the contrary, the Court in *Cunningham* expressly stated that "[g]iven the Legislature's use of the phrase '*any* cost," we believe that the Legislature intended MCL 769.1k(1)(b)(*ii*) to incorporate by reference not only existing statutory provisions that provide courts with the authority to impose specific costs, but also *future* provisions that the Legislature might enact providing courts with the same authority, unless the Legislature states to the contrary. *Cunningham*, 496 Mich at 159 n 12 (emphasis in original). There is nothing within *Cunningham* that precludes the Legislature from adopting such "future" provisions within the context of MCL 769.1k itself.

[6] We again note that our Supreme Court, in remanding this case to this Court, directed that we consider, in light of *Cunningham*, whether the trial court had improperly imposed court costs, and if so, whether its assessment of $500 in court costs constitutes plain error affecting the defendant's substantial rights. *Konopka*, 497 Mich at 863-864. The Court further directed, in that context, that we contrast *People v Franklin*, 491 Mich 916 (2012), with *Johnson v United States*, 520 US 461, 467-468; [117 S Ct 1544; 137 L Ed 2d 718] (1997). *Konopka*, 497 Mich at 863-864. *Franklin* and *Johnson* presented the issue of whether an error is "plain" when settled caselaw changes between the time of a lower court decision and its consideration on appeal. Compare *Franklin*, 491 Mich 916, with *Johnson*, 520 US 461. In light of the post-*Cunningham* legislative amendment of MCL 769.1k, its impact on applicability of *Cunningham* insofar as it relates to this defendant, and the resulting changed circumstances since the issuance of the Supreme Court's remand order, and because we consequently find that the trial court did not commit plain error requiring reversal (although we remand for articulation of a factual basis for

MCL 769.1k(1)(b)(*iii*), the trial court did not establish a factual basis, under the subsequently amended statute, for the $500 in costs imposed. Indeed, it could not have done so at that time. However, without a factual basis for the costs imposed, we cannot determine whether the costs imposed were reasonably related to the actual costs, as required by MCL 769.1k(1)(b)(*iii*). In this case, defendant specifically challenges the lack of reasoning for the costs imposed, and we find that he should be given the opportunity to challenge the reasonableness of the costs below. See *Sanders I*, 296 Mich App at 715. We therefore remand to the trial court for further proceedings to establish a factual basis for the $500 in costs imposed, under MCL 769.1k(1)(b)(*iii*), or to alter that figure, if appropriate.

## IV. CONSTITUTIONAL CHALLENGES

As noted, defendant's reply brief on appeal suggested the existence of "possible responsive arguments," of a constitutional nature, to the amended version of MCL 769.1k. This Court ordered supplemental briefing on those issues. Defendant's supplemental brief raised three constitutional issues: (1) separation of powers; (2) equal protection and due process; and (3) ex post facto violation. We review de novo these constitutional issues, *People v Fonville*, 291 Mich App 363, 376; 804 NW2d 878 (2011), and consider each of them in turn.

The party challenging the constitutionality of a statute has the burden of proving the law's invalidity. *People v Sadows*, 283 Mich App 65, 67; 768 NW2d 93 (2009). When evaluating the constitutionality of a statute, we presume that statutes are constitutional and "exercise the power to declare a law unconstitutional with extreme caution, and we never exercise it where serious doubt exists with regard to a conflict." *Phillips v Mirac, Inc*, 470 Mich 415, 422; 685 NW2d 174 (2004). We indulge "every reasonable presumption" in favor of a statute's validity. *Id*. at 423. A statute is not unconstitutional merely because it is appears "undesirable, unfair, unjust, or inhumane" or because it appears that the statute "is unwise or results in bad policy." *People v Boomer*, 250 Mich App 534, 538; 655 NW2d 255 (2002). Such arguments should be addressed to the Legislature. *Id*. Rather, we will construe a statute as constitutional unless its unconstitutionality is "clearly apparent." *People v Harper*, 479 Mich 599, 621; 739 NW2d 523 (2007), cert den 552 US 1232; 128 S Ct 1444; 170 L Ed2d 278 (2008).

### A. SEPARATION OF POWERS

Defendant first argues that the amended version of MCL 769.1k violates the separation of powers doctrine. According to defendant, the Legislature improperly dismantled the Michigan Supreme Court's decision in *Cunningham* by declaring the statutory amendment to be curative. We disagree.

Const 1963, art 3, § 2 states:

> The powers of government are divided into three branches: legislative, executive and judicial. No person exercising powers of one branch shall exercise

---

the imposition of costs under the new statute), we do not find *Franklin* and *Johnson* applicable to the instant case, and therefore deem it unnecessary to further contrast those cases.

powers properly belonging to another branch except as expressly provided in this constitution.

"The legislative power of the State of Michigan is vested in a senate and a house of representatives." Const 1963, art 4, § 1. "Simply put, legislative power is the power to make laws." *In re Rovas Complaint*, 482 Mich 90, 98; 754 NW2d 259 (2008). By contrast, a defining aspect of judicial power is the interpretation of law. *Id.* at 98, citing *Marbury v Madison*, 5 US (1 Cranch) 137; 2 L Ed 60 (1803).

> There is a distinction between legislative and judicial acts. The Legislature makes the law; courts apply it. To enact laws is an exercise of legislative power; to interpret them is an exercise of judicial power. To declare what the law shall be is legislative; to declare what it is or has been is judicial. The legislative power prescribes rules of action. The judicial power determines whether, in a particular case, such rules of action have been transgressed. The Legislature prescribes rules for the future. The judiciary ascertains existing rights. [*In re Manufacturer's Freight Forwarding Co*, 294 Mich 57, 63; 292 NW 678 (1940) (quotation marks and citation omitted).]

"[T]he legislative power of the people through their agent, the legislature, is limited only by the Constitution, which is not a grant of power, but a limitation on the exercise of power[.]" *Oakland Co Taxpayers' League v Bd of Supervisors of Oakland Co*, 355 Mich 305, 323; 94 NW2d 875 (1959), citing *Attorney General v Preston*, 56 Mich 177; 22 NW 261 (1885). See also *Young v Ann Arbor*, 267 Mich 241, 243; 255 NW 579 (1934). "[T]he advisability or wisdom of statutory enactments, which are not violative of the constitutional provisions, is a matter for legislative consideration and not for this Court." *Oakland Co Taxpayers' League*, 355 Mich at 323-324, citing *Huron-Clinton Metro Auth v Bd of Supervisors*, 300 Mich 1; 1 NW2d 430 (1942). "In accordance with the constitution's separation of powers, this Court cannot revise, amend, deconstruct, or ignore the Legislature's product and still be true to our responsibilities that give our branch only the judicial power." *In re Rovas Complaint*, 482 Mich at 98 (quotation marks, brackets, and citation omitted).

In *Romein v Gen Motors Corp*, 436 Mich 515, 536-539; 462 NW2d 555 (1990), reh den 437 Mich 1202 (1990), aff'd 503 US 181; 112 S Ct 1105; 117 L Ed 2d 328 (1992), our Supreme Court held that the Legislature's retroactive amendment of a statute regarding coordination of worker's compensation benefits did not violate the separate of powers clause. The history of the statute at issue in *Romein* was as follows: In 1981, the Legislature enacted 1981 PA 203, which included a provision in MCL 418.354 allowing the coordination of worker's compensation benefits with employer-funded pension plan payments. *Id.* at 521. In *Franks v White Pine Copper Div*, 422 Mich 636; 375 NW2d 715 (1985), reh den sub nom *Chambers v Gen Motors Corp*, 424 Mich 1202 (1985), superseded by statute as stated in *Romein*, 436 Mich at 523, our Supreme Court held that MCL 418.354 permitted the coordination of benefits regardless of the date of injury because the Legislature did not state an intent to limit the coordination provision to employees who were injured after the effective date of the statute. See *Romein*, 436 Mich at 522-523. The Legislature then enacted 1987 PA 28, which indicated that the coordination of benefits provision of 1981 PA 203 was not intended to reduce benefits for employees injured before the effective date of the 1981 statute. *Id.* at 523. 1987 PA 28 "retroactively amended

[MCL 418.354] and prevented any coordination of benefits for claims arising from injuries which occurred before March 31, 1982." *Id*.

Our Supreme Court held in *Romein* that 1987 PA 28 did not violate the separation of powers clause of the Michigan Constitution:

> The operative provisions of the statute do not encroach upon the sphere of the judiciary. Rather, they merely repeal the act that *Chambers* construed. That prior statute is superseded by 1987 PA 28 and the amendatory act expressly indicates that it is to be applied retroactively. This enactment is a valid exercise of the Legislature's authority to retroactively amend legislation perceived to have been misconstrued by the judiciary. Such retroactive amendments based on prior judicial decisions are constitutional if the statute comports with the requirements of the Contract and Due Process Clauses of the federal and state constitutions, and so long as the retroactive provisions of the statute do not impair final judgments.

> Numerous courts have recognized that the Legislature may cure the judicial misinterpretation of a statute. For instance, the federal courts have upheld statutes that retroactively abrogate statutory rights, at least where the repealing statute does not impair final judgments. In *Seese v Bethlehem Steel Co*, 168 F2d 58, 62 (CA 4, 1948), the court reasoned that the Legislature's enactment of a retroactive statute repealing the effects of a prior judicial decision is not an exercise of judicial power[.] [*Romein*, 436 Mich at 537 (citation and emphasis omitted).]

The Court in *Romein* noted that "[c]ourts have consistently upheld the retroactive application of 'curative' legislation which corrects defects subsequently discovered in a statute and which restores what Congress had always believed the law to be." *Id*. at 538, quoting *Long v United States Internal Revenue Serv*, 742 F2d 1173, 1183 (CA 9, 1984), subsequent proceedings vacated on other grounds 487 US 1201; 108 S Ct 1839; 101 L Ed 2d 878 (1988). The Court also noted that "if the defendants' separation of powers claim had merit as applied to the curative statute challenged here, the power of the Legislature to enact curative and remedial legislation would be severely curtailed, even where the statute does not violate constitutional due process limits." *Romein*, 436 Mich at 538-539. Such a consequence would "represent a judicial usurpation of what is properly a legislative function." *Id*.

The Supreme Court's reasoning in *Romein* is applicable here. Our Supreme Court interpreted MCL 769.1k as it existed at the time; contrary to defendant's characterization, the Court did *not* declare the law constitutionally invalid. Following the issuance of *Cunningham,* the Legislature amended MCL 769.1k, effective on October 17, 2014. See 2014 PA 352. The enacting sections of 2014 PA 352 state that the amended statute applies to all costs ordered or assessed under MCL 769.1k before June 18, 2014, i.e., the date of the *Cunningham* decision, and after the effective date of the amended act. Further, the Legislature stated that the amended act was a curative measure addressing courts' authority to impose costs under MCL 769.1k before the issuance of *Cunningham*. 2014 PA 352. The amended version of MCL 769.1k(1)(b)(*iii*) provides for an award of costs that is *not* independently authorized by the statute for the sentencing offense.

-10-

The Legislature's enactment of 2014 PA 352 did not encroach on the sphere of the judiciary. Instead, the Legislature merely amended the statute that *Cunningham* had construed. The Legislature was permitted to retroactively amend the statute that it perceived to have been misconstrued by the judiciary, as long as the statute comported with the contract and due process clauses of the federal and state constitutions. *Romein*, 436 Mich at 537. Defendant does not claim any contract clause violation, and as discussed below, defendant has not established a due process violation. Accordingly, defendant has not established a violation of the separation of powers clause of the Michigan constitution.

## B. DUE PROCESS/EQUAL PROTECTION

Defendant further asserts an equal protection and due process challenge to the amended version of MCL 769.1k. Defendant argues that the amended statute creates different classes of citizens because the statute allows the imposition of costs on defendants sentenced before June 18, 2014, i.e., the date of the *Cunningham* decision, and further allows costs to be imposed on defendants sentenced after the effective date of the amended statute; yet it does not authorize the imposition of costs on defendants sentenced between those dates. Further, defendant argues that civil litigants, unlike criminal defendants, are not required to pay costs for court operating expenses. On the basis of these observations, defendant maintains that the amended version of MCL 769.1k "*may well violate* state and federal protections against [sic] due process of law and equal protection" (emphasis added).

Initially, we note that defendant fails to cite any pertinent authority or to address the legal standards for analyzing an equal protection or due process claim. Nor does defendant articulate whether her due process claim is one of "substantive" or "procedural" due process. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). "An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004). Nonetheless, we will address the issue, and because defendant identifies no "procedural" irregularities, deem her due process claim to be one of "substantive" due process.

The United States and Michigan constitutions require that no one may be deprived of life, liberty or property without due process of law. US Const, Am V; US Const, Am XIV; Const 1963, art 1, § 17; *People v Bearss*, 463 Mich 623, 629; 625 NW2d 10 (2001). For a challenge to a statue on the grounds of violation of substantive due process, a challenger must show that a statute is unrelated to a legitimate government purpose and thus essentially arbitrary. See *Wysocki v Kivi*, 248 Mich App 346, 367; 639 NW2d 572 (2001). Further:

> Both the United States and Michigan Constitutions guarantee equal protection of the law. To determine whether a legislative classification violates equal protection, the reviewing court applies one of three tests. If the legislation creates an inherently suspect classification or affects a fundamental interest, the "strict scrutiny" test applies. Other classifications that are suspect but not inherently suspect are subject to the "substantial relationship" test. However, social and economic legislation is generally examined under the traditional

-11-

"rational basis" test.  [*Zdrojewski v Murphy*, 254 Mich App 50, 79; 657 NW2d 721 (2002) (citations omitted).]

In a challenge brought under brought under the Equal Protection Clause, US Const Am XIV; Const 1963, art 1, § 2, a defendant must show that he was treated differently than other persons who were similarly situated and that there exists no rational basis for such disparate treatment. See *Wysocki v Kivi*, 248 Mich App 346, 367; 639 NW2d 572 (2001).

Both substantive due process and equal protection challenges (in the absence of a highly suspect category such as race, national origin, or ethnicity or a category receiving heightened scrutiny such as legitimacy or gender), are subject to rational basis review, i.e., the consideration of whether the legislation is rationally related to a legitimate government purpose.  See *Crego v Coleman*, 463 Mich 248, 259; 615 NW2d 218 (2000).  Inherently suspect classifications subject to strict scrutiny include race, ethnicity, and national origin.  *Phillips*, 251 Mich App at 596.  No such classifications are alleged here, nor are classes subject to the intermediate "substantial relationship" test, such as gender and mental capacity.  *Id*.  Also, the disparate treatment of criminal offenders is generally viewed as not affecting a person's fundamental interests.  *People v Haynes*, 256 Mich App 341, 345; 664 NW2d 225 (2003).  We thus conclude that the rational basis test applies in this case.

> Under the rational basis test, legislation is presumed to be constitutional and will survive review if the classification scheme is rationally related to a legitimate governmental purpose.  The burden of proof is on the person attacking the legislation to show that the classification is arbitrary.  Rational-basis review does not test the wisdom, need or appropriateness of the legislation, and the challenged statute is not invalid for lack of mathematical precision in its classification or because it results in some inequity.  [*Zdrojewski*, 254 Mich App at 80 (quotation marks and citations omitted).]

The test to determine whether legislation violates substantive due process protections is essentially the same as the test under the equal protection clause.  *Phillips*, 251 Mich App at 598; *Sleet*, 193 Mich App at 605-606.

In the instant case, defendant contends that 2014 PA 352 classifies criminal defendants based on the date that the defendant was sentenced.  "Classifications based upon cutoff dates . . . are not by themselves arbitrary or unreasonable."  *Sleet*, 193 Mich App at 605, 607.  Defendant has not established that the classifications established by 2014 PA 352 are arbitrary.  The statute is rationally related to this legitimate purpose because it provides for the collection of costs from criminal defendants.  MCL 769.1k(1)(b)(*iii*).  See *Dawson v Secretary of State*, 274 Mich App 723, 739; 739 NW2d 339 (2007) (opinion of Wilder, J.) (concluding that a classification scheme for assessing driver responsibility fees from persons convicted of certain offenses was rationally related to the legitimate governmental purpose of generating revenue from persons who impose costs on the government and society).  The exclusion from this costs provision of criminal defendants sentenced between the issuance of *Cunningham* and the enactment of the amended statute is rationally related to the legitimate goal to respect the entry of judgments not awarding costs during the period that the *Cunningham* interpretation of MCL 769.1k was in effect.  The

fact that the statute may result in some inequity does not by itself render the statute invalid. *Zdrojewski*, 254 Mich App at 80.

Further, with regard to civil litigants, the Legislature may rationally enact laws that treat criminal defendants differently from civil litigants. Because "the state, including its local subdivisions, is responsible for costs associated with arresting, processing, and adjudicating individuals" who commit criminal offenses, the classification scheme imposing costs on criminal defendants but not civil litigants is "rationally related to the legitimate governmental purpose of generating revenue from individuals who impose costs on the government and society." See *Dawson v Sec of State*, 274 Mich App 723, 738; 739 NW2d 339 (2007).[7] Defendant has failed to show that any classifications created by the 2014 PA 352 are arbitrary. *Zdrojewski*, 254 Mich App at 80. We therefore reject her equal protection and substantive due process claims.

### C. EX POST FACTO VIOLATION

Defendant further argues that application of the amended statute violates the constitutional prohibitions on ex post facto punishments because she committed the sentencing offenses before the effective date of the amendment of MCL 769.1k. We disagree.

> The Ex Post Facto Clauses of the United States and Michigan Constitutions bar the retroactive application of a law if the law: (1) punishes an act that was innocent when the act was committed; (2) makes an act a more serious criminal offense; (3) increases the punishment for a crime; or (4) allows the prosecution to convict on less evidence. [*People v Earl*, 495 Mich 33, 37; 845 NW2d 721 (2014), citing *Calder v Bull*, 3 US (3 Dall) 386, 390; 1 L Ed 648 (1798).]

In this case, defendant argues that the amendment to MCL 769.1k increases the punishment for a crime. We disagree.

The court costs imposed under MCL 769.1k(1)(b)(*iii*) are not a form of punishment. In *Earl*, 495 Mich at 34-35, the trial court imposed a crime victim's rights fund assessment of $130, which was based on a statutory amendment that increased the amount of the assessment after the defendant committed the sentencing offenses. Our Supreme Court held that the increase in the crime victim's rights fund assessment did not violate the bar on ex post facto laws. *Id*. at 35. The Court stated:

---

[7] Other jurisdictions have reached similar conclusions. "[C]ivil litigation is entirely different from criminal litigation, and there is no requirement the two systems be similar." *People v Rountree*, 56 Cal 4th 823, 863; 157 Cal Rptr 3d 1; 301 P3d 150 (2013). "Criminal defendants are also not situated similarly to civil litigants." *Id*.; see also *State v Lang*, 129 Ohio St 3d 512, 525; 2011 Ohio 4215; 954 NE2d 596 (2011), recon den 130 Ohio St 3d 1419; 2011 Ohio 5605; 956 NE2d 310 (2011). Although not binding on this Court, case law from other jurisdictions may be considered persuasive. *Ammex, Inc v Dep't of Treasury*, 273 Mich App 623, 639 n 15; 732 NW2d 116 (2007).

We conclude that an increase in the crime victim's rights assessment does not violate the bar on ex post facto laws because the Legislature's intent in enacting the assessment was civil in nature. Additionally, the purpose and effect of the assessment is not so punitive as to negate the Legislature's civil intent. Therefore, we affirm the judgment of the Court of Appeals that the increase in the crime victim's rights assessment does not violate the Ex Post Facto Clauses of the Michigan and United States Constitutions. [*Id*. at 49-50.]

In reaching this conclusion, the *Earl* Court explained the test to be applied in evaluating an ex post facto claim:

Determining whether a law violates the Ex Post Fact Clause is a two-step inquiry. The court must begin by determining whether the Legislature intended the statute as a criminal punishment or a civil remedy. If the Legislature's intention was to impose a criminal punishment, retroactive application of the law violates the Ex Post Fact Clause and the analysis is over. However, if the Legislature intended to enact a civil remedy, the court must also ascertain whether the statutory scheme is so punitive either in purpose or effect as to negate the State's intention to deem it civil. Stated another way, even if the text of the statute indicates the Legislature's intent to impose a civil remedy, we must determine whether the statute nevertheless functions as a criminal punishment in application. [*Id*. at 38.]

The *Earl* Court went on to state that a statute is considered penal if imposes a disability in order to reprimand the wrongdoer or deter others. *Id*. at 38-39. By contrast, a statute reflects a legislative intent to enact a civil remedy if it imposes a disability to further a legitimate governmental purpose. *Id*. at 39.

In *Earl*, 495 Mich at 39, our Supreme Court stated that although the crime victim's rights assessment was imposed at the time of sentencing, the Legislature did not express an intent to make the assessment part of the sentence itself; the assessment did not have a label, function, or purpose consistent with a criminal penalty. Whereas criminal fines are generally responsive to conduct that is being punished, the crime victim's rights assessment levied a flat fee irrespective of the number or severity of the charges. *Id*. at 40-41. Also, there was only one crime victim's rights assessment for each criminal case, whereas the amount of a punitive fine generally depends on the specific facts of the case. *Id*. at 41. Further, the crime victim's rights assessment had a non-punitive purpose of providing funding for crime victim's services. *Id*. Although the assessment placed a burden on convicted criminal defendants, the purpose of the assessment was to fund programs that support crime victims. *Id*. at 42.

We reach a similar conclusion in this case. Although defendant is correct that court costs imposed are generally reflected on the judgment of sentence and are only imposed on convicted defendants, the language of MCL 769.1k(1)(b)(*iii*) does not reflect an intent by the Legislature to make the imposition of court costs a criminal punishment. "The Legislature is aware that a fine is generally a criminal punishment." *Id*. at 40. Whereas MCL 769.1k(1)(b)(*i*) provides that a court may impose a fine authorized by the statute for the sentencing offense, MCL 769.1k(1)(b)(*iii*) does *not* reference a fine but instead provides for the imposition of costs reasonably related to actual costs incurred in the operation of the court. Moreover, the costs are

-14-

imposed without reference to the number or severity of the charges. In particular, the costs imposed must be "reasonably related to the actual costs incurred by the trial court without separately calculating those costs involved in the particular case, including" salaries and benefits for court personnel, goods and services necessary to operate the court, and necessary expenses to operate and maintain court buildings and facilities. MCL 769.1k(1)(b)(*iii*). As with the crime victim's rights assessment in *Earl*, MCL 769.1k(1)(b)(*iii*) provides only for one assessment of costs in a particular case, "contrary to the manner in which punitive fines are usually imposed, i.e., where the amount of the fine generally depends on the specific facts of the case." *Id*. at 41. In addition, MCL 769.1k(1)(b)(*iii*) has the non-punitive purpose of providing funding for court operations. Although the costs provision places a burden on convicted criminal defendants, the purpose is to fund the court's operation rather than to punish convicted defendants.

We therefore conclude that the Legislature intended the costs provision of MCL 769.1k(1)(b)(*iii*) to be a civil remedy. We next analyze whether the costs provision is nonetheless so punitive in purpose or effect that it negates the Legislature's civil intent. *Earl*, 495 Mich at 43. "[C]ourts will reject the legislature's manifest intent to impose a civil remedy only where a party challenging the statute provides the clearest proof that the statutory scheme is so punitive either in purpose of effect to negate the intention to deem it civil." *Id*. at 44 (quotation marks and punctuation omitted). We conclude that the costs provision of MCL 769.1k(1)(b)(*iii*) is not so punitive.

In analyzing whether a law has the purpose or effect of being punitive, a court considers the following factors:

> [1] Whether the sanction involves an affirmative disability or restraint, [2] whether it has historically been regarded as a punishment, [3] whether it comes into play only on a finding of scienter, [4] whether its operation will promote the traditional aims of punishment—retribution and deterrence, [5] whether the behavior to which it applies is already a crime, [6] whether an alternative purpose to which it may rationally be connected is assignable for it, and [7] whether it appears excessive in relation to the alternative purpose assigned. [*Earl*, 495 Mich at 44, quoting *Kennedy v Mendoza-Martinez*, 372 US 144, 168-169; 83 S Ct 554; 9 L Ed 2d 664 (1963).]

This list is not exhaustive. *Earl*, 495 Mich at 44.

Here, the first factor weighs against finding a punitive purpose or effect because the assessment of costs does not comprise an affirmative disability or restraint. The imposition of costs reasonably related to the actual costs incurred by the trial court does not constitute a physical restraint or resemble imprisonment. Although the imposition of such costs, amounting to $500 in this case, may have some consequential effect, "to hold that any governmental regulation that has indirect punitive effects constitutes a punishment would undermine the government's ability to engage in effective regulation." *Earl*, 495 Mich at 45, citing *Smith v Doe*, 538 US 84, 102; 123 S Ct 1140; 155 L Ed 2d 164 (2003), reh den 538 US 1009; 123 S Ct 1925; 155 L Ed 2d 844 (2003). The second factor also weighs against a punitive purpose or effect because there is no evidence that the imposition of court costs has been regarded in our history or traditions as a form of criminal punishment. Although a fine has been regarded as

punishment, costs under MCL 769.1k(1)(b)(*iii*) lack the characteristics of a fine because the costs are to be imposed without regard to the specific facts of the case and the aim of the assessment is to fund court operations. *Earl*, 495 Mich at 45.

The fourth factor weighs against a punitive purpose or effect because the imposition of costs does not further the traditional punitive aims of retribution and deterrence. There is no retributive purpose because the costs are assessed without regard to the factual nature of the crimes or the number of convictions. *Earl*, 495 Mich at 46. Further, any deterrent effect of imposing court costs is likely minimal given the other potential consequences of criminal punishment such as incarceration and significant fines. *Id*. The sixth factor weighs against a punitive purpose or effect because the imposition of court costs has a rational connection to the non-punitive purpose of funding court operations. Any punitive effect is incidental to this non-punitive purpose, and the decision to place this funding burden on criminal defendants is a rational policy decision. See *id*. at 47. Finally, the seventh factor weights against a punitive purpose or effect because the costs provision is not excessive with respect to its purpose. Each convicted criminal defendant is subject to the costs assessment, which is imposed without regard to the number of convictions and which must be reasonably related to the court's actual costs without separately calculating those costs involved in the particular case. MCL 769.1k(1)(b)(*iii*). By requiring a reasonable relationship to actual costs, the statute ensures adequate funding for the operation of the court without exceeding the purpose of the provision.

As in *Earl*, the third and fifth factors are not useful in the ex post facto analysis before this Court in the instant case. Although a convicted criminal defendant's underlying conduct will always constitute a crime, the imposition of costs is not responsive to the defendant's specific conduct. A finding of scienter is also irrelevant because the statute provides for the imposition of costs without reference to the level of criminal intent required in a particular case. Therefore, these factors carry little weight in the analysis. *Earl*, 495 Mich at 48.

Overall, applying the above factors, we conclude defendant has failed to prove that the costs provision in MCL 769.1k(1)(b)(*iii*) is so punitive in purpose or effect that it negates the Legislature's civil intent.

## V. CONCLUSION

For the reasons stated, we affirm the trial court's authority to impose court costs in the instant case, but remand for determination of the factual basis for the costs imposed pursuant to MCL 769.1k(1)(b)(*iii*). We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Michael J. Riordan
/s/ William B. Murphy

-16-