# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

QUENTIN LAMAR LINDSEY,

Defendant-Appellant.

UNPUBLISHED
September 25, 2018

No. 338356
Macomb Circuit Court
LC No. 2016-002043-FC

Before: M. J. KELLY, P.J., and MARKEY and FORT HOOD, JJ.

PER CURIAM.

Defendant appeals by right his conviction after a jury trial of first-degree criminal sexual conduct (penetration with person under 13), MCL 750.520b(1)(a). We affirm his conviction but remand to allow the trial court to establish a factual basis for the court costs imposed under MCL 769.1k(1)(b)(*iii*) or to alter the costs imposed if appropriate.

This matter arises from allegations of sexual assault made by defendant's niece. JML testified that when she and her family lived in defendant's household, defendant led her into his bedroom, pulled down both of their pants, bent her over the bed, and put his penis "inside of my butt where I go to the bathroom at . . . ." JML did not tell anybody about the assault for several years. According to JML's mother, the family lived in defendant's household for approximately two months when JML was six years old. The prosecution also presented evidence that defendant committed a similar sexual assault against another minor relative, TC, in 2011. In that instance, TC was bent over defendant's bed, playing a video game, when defendant pulled down TC's pants and his own pants. TC testified that defendant "didn't get inside" because another family member came into the room. In addition, the prosecution presented a signed, handwritten statement from defendant admitting that he penetrated JML's anus on one occasion. At trial, defendant acknowledged that he pulled down JML's pants and rubbed his penis against her buttocks, but denied any penetration.

## I. HEARSAY

On appeal, defendant first argues that the trial court erred by allowing JML's mother to testify about JML's out-of-court disclosure. A trial court's evidentiary rulings are reviewed for an abuse of discretion. *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). "A trial court abuses its discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes." *People v Green*, 313 Mich App 526, 531; 884 NW2d 838

-1-

(2015) (quotation marks and citation omitted). There is generally no abuse of discretion when the trial court's decision involves a close evidentiary question. *Aldrich*, 246 Mich App at 113. A preserved error in the admission of evidence will not warrant reversal unless on review of the entire record, it affirmatively appears that it is more probable than not that the error was outcome determinative. *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999).

It is undisputed that testimony relating what JML told her mother about the assault fell within the definition of hearsay, which is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay is inadmissible unless it falls within an exception set forth in the Michigan Rules of Evidence. *People v Chelmicki*, 305 Mich App 58, 63; 850 NW2d 612 (2014); MRE 802. In this case, the trial court admitted the hearsay under MRE 803(2) and (24). Defendant argues neither exception was applicable. We agree.

The excited-utterance exception provides that hearsay will not be excluded from evidence if it is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." MRE 803(2). The excited-utterance exception recognizes that such statements are generally reliable because "a person who is still under the sway of excitement precipitated by an external startling event will not have the reflective capacity essential for fabrication so that any utterance will be spontaneous and trustworthy." *People v McLaughlin*, 258 Mich App 635, 659; 672 NW2d 860 (2003) (quotation marks and citation omitted). Thus, to be admissible as an excited utterance, the declarant's statement must have been made when the declarant was still under the stress of the startling event or condition. *Id*. at 659-660. Although the passage of time is highly relevant to this inquiry, it is not dispositive. *People v Smith*, 456 Mich 543, 551-552; 581 NW2d 654 (1998).

In overruling defense counsel's objection to testimony offered by JML's mother regarding her disclosure, the trial court reasoned that JML was still under the stress caused by the sexual assault, as evidenced by her trial testimony. In particular, the trial court noted that JML said she disclosed the assault because it was still troubling her and indicated that she was afraid to tell anyone when it happened because her family was residing in defendant's household. We agree that the trial court erred in this regard. Although the trial court's recollection of JML's testimony was accurate, the court's reasoning fails to appreciate the significance of the lengthy period that elapsed between the assault and JML's disclosure—a period of at least four years—as well as certain events that took place during that time.

JML and her family lived in the same household as defendant for no more than one or two months. While JML might have been influenced by defendant's presence before she and her family moved, there is no reason to believe that she continued to feel stress from that factor thereafter. Similarly, the reason for JML's eventual disclosure provides little support for its admissibility as an excited utterance. As the trial court observed, JML testified that she decided to tell her mother what happened because it continued to replay in her mind. But in response to defense counsel's inquiries, JML further explained that she had only been thinking about disclosing the assault for about one or two months before she told her mother. While it is not difficult to imagine that JML continued to be emotionally disturbed in the aftermath of the assault, there is simply no evidence of JML's state of mind in the years that passed between the assault and the month or two preceding her disclosure. As such, the record does not support that

-2-

JML was under such a high level of constant stress as a result of the assault that she lacked "the reflective capacity essential for fabrication." *Smith*, 456 Mich at 550 (quotation marks and citation omitted). The admission of JML's statement under these circumstances was improper.[1]

The trial court also erred to the extent that it found the hearsay statement admissible under the residual exception of MRE 803(24). To be admissible under this exception a statement must satisfy four requirements:

> (1) it must have circumstantial guarantees of trustworthiness equal to the categorical exceptions, (2) it must tend to establish a material fact, (3) it must be the most probative evidence on that fact that the offering party could produce through reasonable efforts, and (4) its admission must serve the interests of justice. [*People v Katt*, 468 Mich 272, 279; 662 NW2d 12 (2003).]

Additionally, MRE 803(24) requires the party offering evidence under the residual exception to notify the adverse party of its intent to do so in advance of trial. *Id*. In this case, the trial court did not consider whether the statement satisfied *any* of these requirements. Although the trial court explained its rationale for ruling that the statement was admissible as an excited utterance, it merely announced that admission was also warranted under MRE 803(24) without identifying a single fact or circumstance supporting that conclusion. It is undisputed that the prosecution did not provide advance notice of its intent to offer the statement under the residual exception. It is also patent that the hearsay testimony was not the most probative evidence of the assault, as JML personally testified about what occurred. Accordingly, the trial court abused its discretion by admitting the statement under the residual exception.

Nonetheless, although the trial court's decision to admit the hearsay statement fell outside the range of reasonable and principled outcomes, on review of the entire record, it does not affirmatively appear that it is more probable than not that the error was outcome determinative. *Lukity*, 460 Mich at 495-496. The testimony concerning JML's disclosure was exceedingly brief. JML's mother briefly explained that JML reported defendant taking her into his basement bedroom, removing her pants, and then doing "what he did." According to her mother, JML did not describe defendant's assault in any detail, instead repeatedly asking about "the white stuff." As such, the hearsay testimony did not present anything to the jury that it could not have gleaned from JML's own testimony describing the circumstances of the assault. If anything, the testimony of JML's mother regarding the disclosure might have negatively impacted JML's

---

[1] The trial court's reliance on the *Smith* Court's indication that "there is in express limit for excited utterances," *Smith*, 456 Mich at 551-552, was misplaced. Despite recognizing that the passage of time is not dispositive, the Court cautioned that the statement in that case made 10 hours after a sexual assault was "nearing the outer limits of admissibility under the excited utterance exception[.]" *Id*. at 554 n 4. Further, the *Smith* complainant's behavior between the assault and excited utterance was extraordinary and demonstrated "a continuing level of stress arising from the assault that precluded any possibility of fabrication." *Id*. at 553. In this case, there was no evidence of circumstances suggesting that JML similarly suffered a continuing level of stress between the time of the assault and her disclosure.

credibility because JML's mother recalled JML's saying she first went into the basement to get a toy, while JML testified that she went to the basement to watch television. JML's mother also emphasized that JML repeatedly asked about "the white stuff," but at trial JML testified that something clear came out of defendant's penis. Given the lack of detail and these discrepancies, it is improbable that the admission of JML's hearsay statement was outcome determinative.

## II. OTHER-ACTS EVIDENCE

Next, defendant takes issue with the admission of evidence concerning his sexual assault of TC. Defendant does not dispute that evidence concerning this assault was admissible under MCL 768.27a, which permits "admission of other-acts evidence [in cases involving sexual abuse of minors] to demonstrate the likelihood of a defendant's criminal sexual behavior toward other minors." *People v Buie (On Remand)*, 298 Mich App 50, 71; 825 NW2d 361 (2012) (quotation marks and citation omitted). Instead, defendant argues that the evidence should have been excluded because its probative value was substantially outweighed by the risk of unfair prejudice. We disagree.

Although admissible under MCL 768.27a, evidence of other sexual behavior towards minors offered to demonstrate a defendant's propensity for such conduct remains prejudicial by nature and subject to exclusion under MRE 403, but court's must weigh the propensity inference of the evidence in favor of its admissibility. *People v Watkins*, 491 Mich 450, 486-487; 818 NW2d 296 (2012). The Court explained:

> [W]hen applying MRE 403 to evidence admissible under MCL 768.27a, courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect. That is, other-acts evidence admissible under MCL 768.27a may not be excluded under MRE 403 as overly prejudicial merely because it allows a jury to draw a propensity inference. . . .
>
> This does not mean, however, that other-acts evidence admissible under MCL 768.27a may never be excluded under MRE 403 as overly prejudicial. There are several considerations that may lead a court to exclude such evidence. These considerations include (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Id*. at 487-488.]

Application of these factors to the case at hand suggests that the trial court's decision to admit the other-acts evidence was within the range of reasonable and principled outcomes. First, the sexual assaults alleged by TC and JML occurred in a very similar manner. That is, both complainants were minor relatives of defendant, of a similar age at the time of the assaults, whom defendant assaulted in his bedroom. Both complainants asserted that they were bent over the bed and that defendant removed their pants before the assault and told them not to say anything. Although there is no indication that defendant penetrated TC's anus, it could be

reasonably inferred that he may have intended to do so until they were interrupted by the arrival of another family member.

The temporal proximity of the two acts is unclear, as conflicting evidence was presented concerning when the assault against JML took place. According to JML's mother, her family lived with defendant in the winter of 2009. Defendant's brother testified that JML's family lived with his family in 2007, and defendant indicated that it was in 2008. Defendant's assault against TC occurred in 2011. Thus, the two acts may have occurred anywhere from two to four years apart. But in light of the similarity of the two acts, the passage of time does not require exclusion of the evidence in and of itself. See *People v Solloway*, 316 Mich App 174, 195; 891 NW2d 255 (2016) (finding that temporal divide of approximately 12 years did not preclude admission when the charged crime and other act closely mirrored each other). There was no evidence of intervening acts that occurred between the two events that would either weigh in favor of or against exclusion of the other-acts evidence. But because the evidence demonstrates that both complainants alleged that defendant's assaults against them were isolated occurrences, the third factor weighs in favor of exclusion of the challenged evidence.

Further, the reliability of the evidence demonstrating that defendant sexually assaulted TC weighs in favor of admission. It was essentially uncontested that the defendant sexually assaulted TC in 2011; Detective Matthew Closurdo testified that defendant admitted to rubbing his penis against TC's buttocks from behind. While defendant did not describe the nature of the assault against TC in any detail, he agreed that he "hump[ed]" TC and said he felt bad about it.

The prosecution's need for evidence beyond the testimony of JML and defendant also weighs in favor of admission. Although defendant testified and admitted to many aspects of JML's allegation, he denied an essential element of the charge, i.e., penetration. Furthermore, the delay in JML's disclosure presented an inherent weakness in the prosecution's proofs. For instance, because of the delay, there was no possibility of obtaining or presenting physical evidence of the assault to corroborate JML's allegation, nor were there any witnesses who could testify regarding the behavior of JML or defendant around the time of the assault. Assuming the assault occurred sometime between 2007 and 2009, anywhere from seven to nine years had elapsed between the assault and JML's testimony at trial. This significant lapse of time called JML's memory and credibility into question, particularly when coupled with JML's young age at the time of the assault.

Viewing the totality of the circumstances, the trial court did not abuse its discretion by admitting the other-acts evidence. The evidence had a high probative value; it demonstrated that defendant had a propensity for sexually abusing minor relatives by putting his penis in contact with their buttocks. In turn, this propensity leant credibility to JML's account of the assault. In contrast, the risk of unfair prejudice was slight, and the majority of the factors identified in *Watkins*, 491 Mich at 487-488, did not weigh in favor of excluding the evidence under MRE 403. Accordingly, the other-acts evidence was properly admitted.

III. COURT COSTS

Lastly, defendant argues that he is entitled to a remand because the trial court failed to establish a factual basis for assessing $600 in court costs during sentencing. We agree.

Defendant did not preserve this issue by challenging the assessment of costs at sentencing. *People v Konopka (On Remand)*, 309 Mich App 345, 356; 869 NW2d 651 (2015). Our review is therefore limited to plain error. *Id*. Under this standard, defendant "must demonstrate plain error affecting his substantial rights, meaning that he was actually innocent or that the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings independent of his innocence." *People v Knox*, 469 Mich 502, 508; 674 NW2d 366 (2004).

MCL 769.1k empowers the trial court to impose certain costs upon a defendant at sentencing. In addition to the costs specifically delineated by the statute the defendant was determined to have violated, MCL 769.1k(1)(b)(*iii*), authorizes the court to impose "any cost reasonably related to the actual costs incurred by the trial court without separately calculating those costs involved in the particular case . . . ." However, because the court's authority to order costs in addition to those specifically provided for by statute is limited to costs that are "reasonably related to the actual costs incurred by the trial court," it is essential to meaningful appellate review that the trial court establish a factual basis for the costs imposed. *Konopka*, 309 Mich App at 359-360. In this case, the trial court did not articulate a factual basis for the costs imposed. We therefore remand to the trial court with directions to establish a factual basis for the costs imposed under MCL 769.1k(1)(b)(*iii*) or to alter the costs imposed if appropriate. See *id*. at 360. We affirm defendant's conviction and sentence in all other respects.

We affirm and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Jane E. Markey
/s/ Karen M. Fort Hood

-6-